UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

|  |  |  |
|---|---|---|
| | : | Civ. Action No. |
| RENEE JOHNSON, | : | 19-CV-3433 |
| | : | |
| Plaintiff, | : | **COMPLAINT** |
| | : | **AND** |
| – against – | : | **JURY DEMAND** |
| | : | |
| | : | |
| TD BANK, N.A., | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------------------- X

Plaintiff, RENEE JOHNSON ("Ms. Johnson"), by her attorneys, as and for her complaint against Defendant, TD BANK, N.A. ("TD Bank" or the "Bank"), alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action against TD Bank, the Defendant, for damages arising out of TD Bank's violations of the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA").

## THE PARTIES

2.      Ms. Johnson, the Plaintiff, is an individual who is African American and lives in The Bronx.

3.      Ms. Johnson is employed as a maintenance worker at a precinct for the New York City Police Department.

4.      Ms. Johnson is a "consumer" for the purposes of 15 U.S.C. § 1693a(6) of the EFTA and Regulation E, 12 C.F.R. §§ 205.2, 1005.2, because she is a natural person who has an account held by a financial institution and who was issued an access device by that financial institution and entered into an agreement for the provision of electronic fund transfer services with that financial institution.

5.      Defendant, TD Bank, N.A., is a national banking association with its headquarters in Cherry Hill, New Jersey.

6.      TD Bank, N.A. has branches all around the New York metropolitan area, including Plaintiff's local branch at 371 East 149th Street, in The Bronx.

7.      TD Bank, N.A. is a "financial institution", as the term is defined by 15 U.S.C. § 1693a(9) of the EFTA and Regulation E, 12 C.F.R. §§ 205.2(i), 1005.2(i), because it is a national bank and directly or indirectly holds an account belonging to a consumer or issues an access device and agrees with a consumer to provide electronic fund transfer services.

## JURISDICTION AND VENUE

8.      This action arises under the Electronic Fund Transfer Act, 15 U.S.C. §1693 *et seq*., and the rules and regulations thereunder.  Title 15 U.S.C. § 1693m(g) provides that civil actions brought under the EFTA may be commenced in any United States District Court without regard to the amount in controversy.

9.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTS

10.     On or around April 16, 2018, someone—through a series of 30 transactions—attempted to withdraw $2,905.70 from Ms. Johnson's TD Bank checking account. All of the purchases were made using a PayPal account. Upon information and belief, all of the purchases were made through the online merchant, eBay.

11.     The first 13 transactions were all in the amount of $97.99, and the remaining transactions were all in the amount of $95.99.

12.     At the time of the initial transaction, Ms. Johnson's checking account contained $1,321.66.

13.     After the 30 transactions, her account had a negative balance of $1,486.09.

14.     On April 17, 2018, TD Bank charged Ms. Johnson a $175 overdraft fee.

15.     Ms. Johnson had not shared her debit card information with anyone except merchants in the ordinary course of making purchases.

16.     Ms. Johnson learned of the unauthorized transactions when she attempted to make a purchase from a hardware store on or about April 16, 2018, and the transaction was denied due to lack of funds.

17.     The next morning, on or about April 17, 2018, Ms. Johnson went in person to a TD Bank branch in the Mott Haven section of the South Bronx and submitted an oral complaint to a TD Bank representative.

18.     A TD Bank representative informed her that the transactions were made through a PayPal account.

19.     Ms. Johnson has never had a PayPal account.

20.     TD Bank closed the account and filled out an electronic complaint form based in part on her oral complaint and submitted it internally.

21.     The form states that the complaint was submitted on April 18, 2018.

22.     TD Bank informed Ms. Johnson that it would investigate the matter.

23.     TD Bank did not mail or report to Ms. Johnson the results of its investigation and never provided a provisional credit while it conducted its investigation.

24.     Ms. Johnson returned to the TD Bank branch two to three weeks later to inquire about the results of the investigation because she had not received any notification from TD Bank.

25.     Ms. Johnson was told by a branch manager that she needed to obtain a police report.

26.     Ms. Johnson filed a police report on or about May 15, 2018 and provided it in person to the branch manager at her local branch.

27.     The manager accepted the report but told her that the Bank had already determined that there was no fraud.

28.     The branch manager did not provide Ms. Johnson with anything in writing.

29.     Ms. Johnson did not receive any response to her complaint until approximately June, when she went to a TD Bank branch to follow up on her complaint again.

-4-

30.     At that time, she obtained a copy of the electronic complaint form submitted by
TD Bank, which included three "comment note[s]."

31.     The first note, dated April 27, 2018, at 2:18:16 p.m., said "claim has been denied
because merchant verified customers' full billing address, zip code and security code. Customer
must contact the Merchant in order to dispute, cancel, and seek a refund."

32.     The second note, added the same day, seconds later at 2:18:53 p.m. by the same
employee, stated: "No closed card attempts. There were no attempts at point of sale to use the
card after it was closed by the Cardholder indicating fraudster knew when the card was closed."

33.     The third note, dated May 21, 2018, at 1:40:01 stated: "TL-Rec'd police incident
report via fax – Sent to filenet".

34.     Ms. Johnson had been calling PayPal beginning in or about May 2018 to obtain
information about the PayPal account and to obtain verification that no account existed in her
name.

35.     PayPal refused to help at first because there was, in fact, no account in her name.

36.     Eventually, a PayPal representative informed Ms. Johnson over the phone that the
account in question was in the name of "Vincent Gore."

37.     Ms. Johnson does not know anyone by that name.

38.     The representative also informed Ms. Johnson that the account was used to
purchase jewelry from eBay.

39.     Ms. Johnson did not have an account with eBay and did not purchase jewelry
from eBay.

40.    In or about late November, Ms. Johnson was finally able to obtain two confirmation emails from PayPal.

41.    The first email, from PayPal customer support, dated November 19, 2018, states that Ms. Johnson does not have an active PayPal account.

42.    The second email, dated November 20, 2018, states that Ms. Johnson has never had a PayPal account.

43.    The emails were sent to Ms. Johnson's godmother's email account, as Ms. Johnson does not have an email account or a computer.

44.    Ms. Johnson attempted to deliver this additional evidence of identity theft to TD Bank. However, the branch manager refused to accept the print-outs of the emails, stating that the debt—the overdraft amount and the overdraft fee—had already been referred to collections.

45.    Ms. Johnson received a collection letter, dated July 21, 2018, from Radius Global Solutions stating that she owed a debt in the amount of $2,074.78 to TD Bank.

46.    She later received a second collection letter, dated February 4, 2019, from MRS Associates, for the same alleged overdraft.

47.    In spite of Ms. Johnson's efforts to prove she was the victim of identity theft, including obtaining a police report, and in spite of the highly suspicious nature of the transactions, including 30 transactions in one day, all in the amounts of $97.99 or $95.99, and all using PayPal, a service that Ms. Johnson had no history of using before, TD determined that no fraud had occurred after allegedly conducting an "investigation." TD Bank ignored the facts and governing law, rejected Ms. Johnson's complaints, ignored Ms. Johnson's requests for further

-6-

investigation of her claims, and charged Ms. Johnson's account for the full amount of the

fraudulent transfers, fees, and charges.

48.     Thereafter, TD Bank, in direct violation of Federal law and its own policies, failed

to give Ms. Johnson a meaningful justification for rejecting her disputes.

49.     TD Bank also failed to provisionally credit Ms. Johnson's account during its

investigation.

50.     In addition, TD Bank never mailed or reported to Ms. Johnson the results of its

investigation. Instead, she had to go to her local branch in person multiple times to ask for the

results of TD Bank's alleged investigation.

51.     As a result of TD Bank's actions, Ms. Johnson has suffered not only monetary

damages, but damages from emotional distress.

## **LEGAL FRAMEWORK**

52.     Plaintiff has causes of action under the Electronic Fund Transfer Act and the rules

and regulations thereunder, New York General Business Law § 349, and New York State

common law.

### *Electronic Fund Transfer Act*

53.     The Electronic Fund Transfer Act of 1978, 15 U.S.C. § 1693 *et seq*. (the

"EFTA"), is intended to protect individual consumers engaging in electronic fund transfers.  *See*

15 U.S.C. § 1693(b) (2006) ("The primary objective of this subchapter [...] is the provision of

individual consumer rights.")

-7-

54.     The federal regulations promulgated pursuant to EFTA § 1693b are found in Part

205 of Subchapter A of Chapter II of Title 12 of the Code of Federal Regulations and Part 1005

of Chapter X of Title 12 of the Code of Federal Regulations and are known as "Regulation E".

*See* 12 C.F.R. §§ 205.1(a), 1005.1(a) (2006).  The stated purpose of these federal regulations is

to carry out the purposes of the EFTA, the primary objective of which "is the protection of

individual consumers engaging in electronic fund transfers."  12 C.F.R. §§ 205.1(b), 1005.1(b).

55.     An "unauthorized electronic fund transfer" is defined in the EFTA as "an

electronic fund transfer from a consumer's account initiated by a person other than the consumer

without actual authority to initiate such transfer and from which the consumer receives no

benefit", 15 U.S.C. § 1693a(12), except for an electronic transfer "(A) initiated by a person other

than the consumer who was furnished with the card, code, or other means of access to such

consumer's account by such consumer, unless the consumer has notified the financial institution

involved that transfers by such other person are no longer authorized, (B) initiated with

fraudulent intent by the consumer or any person acting in concert with the consumer, or (C)

which constitutes an error committed by a financial institution."  *Id.*

56.     In regard to the EFTA, the term "unauthorized electronic fund transfer" includes a

transfer which is initiated by someone who obtained the access device from the consumer

through fraud or robbery.  12 C.F.R. § 205.2(m), Supp. I (Official Staff Interpretation on

§ 205.2(m)(3), (4)); 12 C.F.R. § 1005.2(m), Supp. I (Official Staff Interpretation on

§ 1005.2(m)(3), (4)).

57.     An "access device" is defined in the EFTA as "a card, code, or other means of access to a consumer's account, or any combination thereof, that may be used by the consumer to initiate electronic fund transfers."  12 C.F.R. §§ 205.2(a)(1), 1005.2(a)(1).

58.     An "access device" becomes an "accepted access device" when the consumer "requests and receives, or signs, or uses (or authorizes another to use) the access device to transfer money between accounts or to obtain money property, or services". 12 C.F.R. §§ 205.2(a)(2)(i), 1005.2(a)(2)(i).

59.     If a financial institution receives timely notice of an error, it is required to investigate consumers' claims of error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days.  15 U.S.C. § 1693f(a).

60.     If a financial institution decides to deny a claim of error, it must deliver or mail an explanation of its findings within 3 business days, and, upon the consumer's request, provide the consumer with copies of the documents it relied upon in its investigation to conclude that an error did not occur.  15 U.S.C. § 1693f(d); 12 C.F.R. §§ 205.11(d), 1005.11(d).

61.     If a financial institution receives timely notice, it may—instead of investigating consumers' claims of error, determining whether an error occurred, and reporting or mailing the results of its investigation to the consumer within 10 business days—provisionally recredit consumers' accounts for the amounts alleged to be in error, pending the conclusion of its investigation and its determination of whether an error has occurred.

62.     If a consumer reports to her bank that an unauthorized electronic fund transfer has occurred through use of a bank debit card, the consumer's liability for the unauthorized transfer is limited to $50.00 if it is reported to the bank within two business days after the consumer learns of the loss. 15 USC § 1693g(a).

63.     Under the EFTA, a consumer has no liability when an unauthorized transfer appears on the consumer's monthly statement and is reported by the consumer to the financial institution within sixty days or when an unauthorized transfer does not involve an accepted access device or when the financial institution has not provided a means to identify the consumer.  *See* 12 C.F.R. §§ 205.6(b)(3), 1005.6(b)(3).

64.     Consumers may recover actual damages under the EFTA, 15 U.S.C. § 1693m(a)(1), plus an additional sum of from $100.00 to $1000.00, § 1693m(a)(2)(A), plus the costs of the action and a reasonable attorney's fee, § 1693m(a)(3).  Treble damages may also be awarded if the court finds that a financial institution "did not have a reasonable basis for believing that the consumer's account is not in error."  § 1693f(e).

**FIRST CLAIM FOR RELIEF**
(Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*)

65.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

66.     This claim arises under the EFTA and Regulation E because it relates to unauthorized and fraudulent electronic transfers from and between Ms. Johnson's TD Bank account.

67.     Defendant violated the EFTA and Regulation E.  Defendant's violations include, but are not limited to:

    a.   failing to conduct a sufficient investigation of Ms. Johnson's claims of error;

    b.   failing to timely mail or report to Ms. Johnson an explanation for Defendant's denial of Ms. Johnson's fraud claims;

    c.   failing to provide Ms. Johnson with sufficient documentation regarding Defendant's denial of Ms. Johnson's fraud claims, even after Ms. Johnson requested the same; and

    d.   failing to issue a provisional credit after not conducting its investigation or mailing or reporting the findings of its investigation to Ms. Johnson.

68.     These actions are in violation of 15 U.S.C. §§ 1693f, 1693g and 12 C.F.R. §§ 205.6, 205.11, 1005.6, 1005.11.

69.     As a direct and proximate result of Defendant's violations of EFTA and Regulation E, Plaintiff has sustained actual damages equal to at least $3,080.70, representing $1,321.66 stolen from Ms. Johnson's checking account, a $175 overdraft fee, and a $1,486.09 negative balance, along with interest and fees, for which she is being pursued, plus such other damages as may be determined by the Court.  Ms. Johnson is entitled to recover actual damages under 15 U.S.C. § 1693m(a)(1), plus an additional sum of from $100 to $1,000 under § 1693m(a)(2)(A), plus the costs of the action and a reasonable attorney's fee, under § 1693m(a)(3).

70.     Because TD Bank did not provisionally credit M.s Johnson's account within the 10-day investigation period, did not make a good faith investigation of Ms. Johnson's fraud claims, and lacked a reasonable basis for denying Ms. Johnson's fraud claims, Ms. Johnson is also entitled to recover treble damages, which amount to at least $31,594.23.  *See* 15 U.S.C. § 1693f(e).

71.     In addition, Ms. Johnson is entitled to treble damages because TD Bank knowingly and willfully concluded that the Ms. Johnson's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to it at the time of its investigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.     Enter judgment for Plaintiff on her cause of action;

2.     Award actual, statutory, consequential, and treble damages to the Plaintiff;

3.     Award reasonable attorney's fees and costs to the Plaintiff; and,

4.     Award such other and further relief as may be just, equitable, and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury.

Dated: New York, New York
April 17, 2019

Respectfully submitted,

/s/ Brian L. Bromberg
By: Brian L. Bromberg
One of Plaintiff's Attorneys

Attorneys for the Plaintiff
Brian L. Bromberg
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
Tel: (212) 248-7906
Fax: (212) 248-7908
Email: brian@bromberglawoffice.com

Carolyn E. Coffey
Evan Denerstein
Mobilization for Justice
100 William St., 6th Fl.
New York, NY 10038
Coffey Tel: (212) 417-3701
Email: ccoffey@mfjlegal.org
Denerstein Tel: (212) 417-3760
Email: edenerstein@mfy.org